ROGERS JOSEPH O'DONNELL
THOMAS H. CARLSON (State Bar No. 121367)
311 California Street
San Francisco, California 94104
Telephone: 415.956.2828
Facsimile: 415.956.6457

ANDERSEN, TATE & CARR, P.C.
THOMAS T. TATE
ELIZABETH CLACK-FREEMAN
1505 Lakes Parkway, Suite 100
Lawrenceville, Georgia 30043
Telephone: 770.822.0900
Facsimile: 770.822.9680
*Of Counsel, pending pro hac vice*
*application*

Attorneys for Defendant and
Counterclaimant Peacock Communications,
ATSSC, Inc. d/b/a Atlanta Telephone
Company

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNNEX CORPORATION,<br>a Delaware Corporation,<br><br>        Plaintiff,<br><br>   vs.<br><br>PEACOCK COMMUNICATIONS,<br>ATSSC, INC., a Georgia Corporation; and<br>DOES 1 TO 50 inclusive,<br><br>        Defendants. | Case No. 3:07-CV-03638-EDL<br><br>**PEACOCK COMMUNICATIONS, ATSSC, INC.'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     October 23, 2007<br>Time:    9:00 a.m.<br>Dept.    Courtroom E, Fifteenth Floor<br>Judge:   Magistrate Judge<br>           Elizabeth D. Laporte |
| PEACOCK COMMUNICATIONS,<br>ATSSC, INC., a Georgia corporation,<br><br>        Counterclaimant,<br><br>   vs.<br><br>SYNNEX CORPORATION,<br>a Delaware corporation,<br><br>        Counterclaim<br>        Defendant. | |

Page 1

Peacock Communications, ATSSC, Inc.'s Motion to Transfer Venue; Mem. of Pts. & Auths. in Support Thereof –
Case No: 3:07-CV-03638

261771 3

1

## NOTICE OF MOTION AND MOTION TO TRANSFER VENUE

2    PLEASE TAKE NOTICE that Defendant and Counterclaimant Peacock

3  Communications, ATSSC, Inc. d/b/a Atlanta Telephone Company ("Defendant" or "ATC")

4  hereby moves to transfer the venue of this case to the United States District Court for the

5  Northern District of Georgia, Atlanta Division pursuant to 28 USC § 1404(a).  Defendant

6  ATC hereby gives notice that this motion shall be heard at 9:00 a.m. on October 23, 2007 in

7  Courtroom E as set forth above.

8    This motion is based upon this notice of motion and motion, the attached

9  memorandum of points and authorities, the declaration of John C. Peacock, the pleadings and

10  documents herein, and on such other and further evidence and argument as may be presented

11  prior to, at, or after the hearing.

12  ## I.    STATEMENT OF RELIEF SOUGHT

13    This case should be transferred to the Northern District of Georgia, Atlanta

14  division, in the interests of justice and for the convenience of the parties and witnesses.

15  ## II.    INTRODUCTION

16    This case involves the unfair and deceptive trade practices and active

17  misrepresentations made by Synnex Corpration ("Synnex"), a Delaware corporation, to

18  Peacock Communications, ATSSC, Inc., d/b/a Atlanta Telephone Company, Inc. ("ATC"), a

19  Georgia corporation, which resulted in ATC's overpayment to Synnex of hundreds of

20  thousands of dollars over a period of eighteen months.  In essence, and as the evidence will

21  bear out, Synnex consistently failed to provide the promised discounts to ATC for the subject

22  products.

23    In hopes of gaining leverage by suing ATC in a distant forum, Synnex

24  commenced this action.  However, as detailed below, none of the activities took place in

25  California and none of the witnesses reside here.  And while Synnex might point to a venue

26  clause in a form customer credit application, that clause does not control venue as the

27  interests of justice and the convenience of both the parties and the witnesses dictate that the

28  Northern District of Georgia is the most appropriate forum for this dispute.

Peacock Communications, ATSSC, Inc.'s Motion to Transfer Venue; Mem. of Pts. & Auths. in Support Thereof – Case No: 3:07-CV-03638

261771.3

1    As will be detailed more fully herein, the relationship between Synnex and

2  ATC has absolutely nothing to do with the State of California.  Rather, the relationship

3  between Synnex and ATC arose from communications between party representatives located

4  in and around Atlanta, Georgia and Greenville, South Carolina.  Undeniably, the products

5  that are the subject of this dispute were ordered by ATC by submitting purchase orders to

6  Synnex in its Greenville, South Carolina location.  The products at issue were delivered to

7  ATC from Synnex's Norcross, Georgia warehouse.  Finally, ATC made payments to Synnex

8  through Synnex's Post Office Box in Atlanta, Georgia.  For the reasons set forth herein, ATC

9  thus respectfully requests that this Court grant ATC's Motion to Transfer Venue in this case

10  to the Northern District of Georgia, Atlanta Division, the district and division where ATC's

11  registered agent and principal place of business are located.

12  ### III.  FACTUAL BACKGROUND

13    In the early part of 2003, John Groce of Synnex Corporation contacted John

14  Peacock of ATC to introduce Mr. Peacock to Synnex and to discuss the type of products

15  distributed by Synnex, including Nortel products.  *See* ¶ 3 of the accompanying declaration of

16  John Peacock in support of this motion ("Peacock Decl."), which is incorporated herein by

17  this reference.  Synnex's John Groce is a resident of Greenville, South Carolina who had been

18  working out of Synnex's Greenville, South Carolina location; ATC (and ATC's Mr. Peacock)

19  are based (and reside) in Georgia.  At Mr. Groce's suggestion, ATC entered into a

20  relationship with Synnex whereby ATC would place orders for Nortel products by submitting

21  a purchase order to Synnex, by email, to Synnex's Greenville, South Carolina location.  *See*

22  *id.* ¶ 4.  Several years later, ATC also began purchasing Avaya products through Synnex,

23  using the same purchase order submittal process.  *See id.* ¶ 5.

24    Throughout its relationship with Synnex, ATC communicated with certain

25  Synnex representatives including Tom Brooks, Mark Swilley and John Horner.  *See id.* ¶ 6.

26  Mr. Brooks, Mr. Swilley and Mr. Horner all worked out of Synnex's Greenville, South

27  Carolina location.  *See id.*  ATC also communicated with representatives of Synnex's credit

28  department including Anita Kelly and Betty Adams.  *See id.* ¶ 7.  Both of these

Peacock Communications, ATSSC, Inc.'s Motion to Transfer Venue; Mem. of Pts. & Auths. in Support Thereof –
Case No: 3:07-CV-03638

261771.3

1   representatives also worked out of Synnex's Greenville, South Carolina location. *See id.* At

2   no point during ATC's relationship with Synnex did Mr. Peacock, ATC's Chief Executive

3   Office and Chief Financial Officer, communicate with any Synnex employee in the State of

4   California, and he does not believe that any representative of ATC ever communicated with

5   any Synnex employee in the State of California during this time period. *See id.* ¶ 8.

6          After placing an order for products through Synnex, the majority of those

7   products were shipped to ATC from Synnex's Norcross, Georgia warehouse facility. *See id.*

8   ¶ 9. In some instances, the remainder of the products ATC ordered from Synnex were

9   shipped from a Nortel distribution center in Tennessee. *See id.* ¶ 10. ATC made payments to

10  Synnex to Post Office Box 406748, Atlanta, Georgia 30384. *See id.* ¶ 11. At no point during

11  ATC's relationship with Synnex did ATC place any purchase order or remit any payment to

12  Synnex in the State of California. *See id.* ¶ 12.

13         During the course of their relationship, Synnex accepted the return of defective

14  Nortel products, during the manufacturer's warranty period. *See id.* ¶ 13. Synnex would then

15  credit ATC's account for the amount of the return. *See id.* This procedure describes one of

16  the terms of the business relationship between ATC and Synnex concerning the return of

17  defective Nortel products between Synnex and ATC for time period February 2003 through

18  August 2006. *See id.* After that date, Synnex refused to accept the return of any defective

19  Nortel product purchased by ATC, even though ATC attempted to return those products

20  during the manufacturer's warranty period. *See id.* ¶ 14. As set forth in ATC's counterclaim,

21  ATC has suffered damages as a result of Synnex's failure to accept the return of defective

22  Nortel products. *See id.* ¶ 15.

23         In September of 2005, ATC began purchasing Avaya products through Synnex.

24  *See id.* ¶ 16. Avaya offered ATC certain discounts on purchases made through its authorized

25  distributors, including Synnex. *See id.* ¶ 17. That discount was calculated as follows: 10%

26  of the "National Price List" or "NPL" was to be deducted from the "Dealer Price" in order to

27  calculate the price ATC was to be charged for Avaya products (the "10% discount"). *See id.*

28  / / /

Peacock Communications, ATSSC, Inc.'s Motion to Transfer Venue; Mem. of Pts. & Auths. in Support Thereof –
Case No: 3:07-CV-03638

261771 3

1   On multiple occasions, ATC confirmed with Synnex's Mark Swilley and Tom Brooks their

2   understanding that the 10% discount was being provided by Synnex. *See id.* ¶ 18.

3   Over the course of eighteen months, Tom Brooks and Mark Swilley of Synnex

4   represented that Synnex was providing ATC the 10% discount on Avaya products that ATC

5   purchased from Synnex. *See id.* ¶ 19. In March of 2007, ATC began doing business with

6   another authorized reseller for Avaya called Catalyst. *See id.* ¶ 20. (The relevant Catalyst

7   witness resides in Georgia.) *See id.* ¶ 25. Catalyst agreed that it would provide ATC the 10%

8   discount that had been promised by Avaya. *See id.* In that regard, Catalyst provided ATC

9   with a Price Sheet that set out the NPL, Dealer Price and 10% Discount Price for all Avaya

10  products (the "Price Sheet"). *See id.* Upon receipt of that Price Sheet, ATC discovered that

11  Synnex had not been providing ATC with the 10% discount that it had agreed to provide to

12  ATC and that the discount provided to ATC was less than 10% on almost all Avaya products

13  that ATC had purchased from Synnex. *See id.* Because ATC was not provided with the

14  discount that it had been promised by Synnex, during the course of the eighteen month period

15  that it purchased Avaya products from Synnex, ATC has over paid Synnex for Avaya

16  products it purchased through Synnex. *See id.* ¶ 21.

17  The ATC representatives with relevant information concerning ATC's defense

18  to the claims asserted by Synnex in this lawsuit, and concerning ATC's counterclaims against

19  Synnex, are John Peacock, Jose Davila, Andrea Hawks, Robin Hill and Emily Wu. All of

20  these witnesses are located in and around the Northern District of Georgia. *See id.* ¶ 22. The

21  Nortel representatives with relevant information concerning ATC's defense to the claims

22  asserted by Synnex in this lawsuit and concerning ATC's counterclaims against Synnex,

23  including Cheryl Whitfield and Jeff Frisbee are located in or around Alpharetta, Georgia

24  and/or Greenville, South Carolina. *See id.* ¶ 23. The Avaya representatives with relevant

25  information concerning ATC's defense to the claims asserted by Synnex in this lawsuit and

26  concerning ATC's counterclaims against Synnex, including John Ellis and Joey Davidson are

27  / / /

28  / / /

Peacock Communications, ATSSC, Inc.'s Motion to Transfer Venue; Mem. of Pts. & Auths. in Support Thereof –
Case No: 3:07-CV-03638

261771.3

1   located in or around Alpharetta, Georgia.[1] *See id.* ¶ 24. The Catalyst representative with

2   relevant information concerning ATC's defense to the claims asserted by Synnex in this

3   lawsuit and concerning ATC's counterclaims against Synnex, Josh McInerney, is located in

4   or around Greenville, South Carolina. *See id.* ¶ 25. The documents and information that

5   ATC intends to use as evidence in this case are located in or around the Northern District of

6   Georgia and/or Greenville, South Carolina. *See id.* ¶ 26.

## IV.   ARGUMENT

### A.   The Court is not bound by the forum selection clause

9   Federal District courts have discretion to transfer venue of federal diversity

10  cases in the interest of justice and for the convenience of both the parties and witnesses alike.

11  *See* 28 U.S.C. § 1404(a). This discretion exists even in the face of an otherwise valid

12  contractual forum selection clause which calls for the venue selected by the plaintiff.[2] *See*

13  *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). While a forum selection clause

14  may be a factor in the analysis, its presence alone is only one consideration and is not

15  otherwise dispositive of the transfer analysis. *See id.* at 29-31. Indeed, principles of justice

16  and fairness require a complete analysis that takes into account all of the relevant factors to

17  determine whether venue should be transferred. *See id.* at 30-31.

18  The United States Supreme Court considered the weight to be given to a

19  contractual forum selection clause on a motion to transfer venue to an alternative forum in

20  *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). In that case, the United States

21  Supreme Court held that section 1404 (a) "calls on the district court to weigh in the balance a

22  number of case-specific factors," thus confirming that a forum selection clause should not be

23  / / /

24

25  [1] Alpharetta, Georgia is located within the Northern District of Georgia, Atlanta Division.

26  [2] It should be noted from the outset that John Peacock, the Chief Financial Officer of

27  ATC, does not recall signing the credit application containing the forum selection clause that Plaintiff alleges is valid and controlling. *See* Peacock Aff. ¶ 26. Further, Mr. Peacock avers

28  that the credit application that was submitted to Plaintiff was unsigned. *See Id.* ¶ 28-29.

Page 6

Peacock Communications, ATSSC, Inc.'s Motion to Transfer Venue; Mem. of Pts. & Auths. in Support Thereof – Case No: 3:07-CV-03638

261771 3

1    considered in isolation, but in conjunction with the convenience of the witnesses,

2    convenience of the forum, and fairness of the transfer. *Id.* at 29-30.

3        As recently as the year 2000, the Ninth Circuit Court of Appeals applied

4    *Stewart* to a case involving a Pennsylvania corporation and a California franchisee, and

5    explained in detail other factors the district courts should consider in adjudicating motions to

6    transfer. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2000).

7    Factors set forth by the Court included: (1) the place of negotiation and execution of the

8    agreements; (2) the state most familiar with governing law; (3) the plaintiff's choice of

9    forum;[3] (4) the parties' contacts with the chosen forum; (5) the extent and relation of the

10   contacts with the cause of action in the chosen forum; (6) the variance in litigation costs

11   between the two forums; (7) ability to compel attendance of unwilling non-party witnesses;

12   (8) accessibility to sources of proof; (9) presence of a forum selection clause; and (10)

13   relevant public policy of the forum state. *See id.*

14       In applying these factors based on the United States Supreme Court's model in

15   *Stewart*, the Court in *Jones* denied the motion to transfer venue to Pennsylvania based on

16   section 1404 (a), even in the face of an otherwise valid forum selection clause selecting

17   Pennsylvania as the forum of choice as agreed to by the parties. *See Jones*, 211 F.3d at 499.

18   The Court relied on the weight of the other factors, which it determined clearly favored

19   California as the appropriate forum.  Significant factors in the Court's decision to deny

20   enforcement of the forum selection clause were: (1) the financial impact of litigation in each

21   forum favored litigating the case in California; (2) the majority of relevant witnesses were

22   located in California; (3) more of the sources of proof were located in California; (4) the

23   majority of agreements underlying the claim were negotiated and executed in California; (5)

24   the extent of each parties' contacts favored California; and (6) the claim arose out of the

25   construction and operation of a franchise store in California. *See Jones*, 211 F.3d at 499.

26   _____

27   [3] "Plaintiffs' choice of forum is given 'much less weight' when . . . the forum lacks
     any significant contact with the activities alleged in the complaint." *PRG-Schultz USA, Inc.*
28   *v. Gottschalks, Inc.*, 2005 WL 2649206 at *4 (N.D. Cal. Oct. 17, 2005).

Peacock Communications, ATSSC, Inc.'s Motion to Transfer Venue; Mem. of Pts. & Auths. in Support Thereof –
Case No: 3:07-CV-03638

261771 3

**B.     This case should be transferred to the Northern District of Georgia in the interest of justice and for the convenience of the parties and witnesses.**

In the instant case, this lawsuit could have been brought by Plaintiff Synnex, a Delaware corporation, in the Northern District of Georgia under 28 U.S.C. § 1391(a) and (c) because ATC is a Georgia corporation which resides in and has its principle place of business in the Northern District of Georgia.  Not only should this case be transferred, but to decline to transfer this case would be an injustice to all the parties and witnesses involved, especially when compared to the complete lack of relationship between this dispute and the State of California.

First, the vast majority of business contacts between ATC and Plaintiff occurred in Duluth, Georgia.  *See* Peacock Aff. ¶¶ 3-5, 9-11.  While it is true that Plaintiff extended credit to ATC based on a credit application calling for venue of any dispute in the State of California, it should be noted that 1)  Mr. Peacock, ATC's CEO and CFO does not recall ever signing the credit application in question; and 2) the unsigned credit application was faxed to Synnex's Greenville, South Carolina location.  *See Id.* ¶¶ 27-29.  The venue provision contained in this credit application represents the sole basis upon which Synnex could claim that California is an appropriate forum.  Importantly, ATC was called upon by agents of Plaintiff in ATC's Duluth, Georgia office, and the Synnex representative who initiated the contact hailed out of South Carolina.  *See Id.* ¶ 3.  The resulting business dealings between the parties, from which Plaintiff's claim arose were negotiated and executed by ATC in Duluth, Georgia.  *See Id.* ¶¶ 3-5.  Almost all of Plaintiff's products that were purchased by ATC were delivered from Plaintiff's Norcross, Georgia warehouse facility to ATC's Duluth, Georgia headquarters.  *See Id.* ¶¶ 9-11.  Most importantly, the vast majority of all interaction between ATC and Plaintiff occurred with representatives working out of Plaintiff's Greenville, South Carolina offices, which are located a mere 145 miles from Atlanta and 60 miles from the Georgia state line.  *See Id.* ¶¶ 4-7.  Finally, Plaintiff is a Delaware corporation, not a California corporation.  In sum, the Plaintiff's choice of forum should be given little weight in the balancing of factors due to the lack of any contact that the business transactions

Page 8

Peacock Communications, ATSSC, Inc.'s Motion to Transfer Venue; Mem. of Pts. & Auths. in Support Thereof –
Case No: 3:07-CV-03638

261771.3

1    at issue have with the State of California. *See, supra PRG-Schultz USA, Inc.*, 2005 WL

2    2649206 at *4.

3           Second, the financial impact of the litigation on both parties favors the Georgia

4    forum. All employee witnesses of ATC work and live in the Northern District of Georgia.

5    Further, upon information and belief, all employee witnesses of Synnex work and reside in

6    South Carolina or Georgia. Finally, all of the third-party witnesses from Nortel, Avaya and

7    Catalyst work out of these companies' respective Alpharetta, Georgia or Greenville, South

8    Carolina offices. Section 1404(a) was designed to prevent this exact scenario:  forcing

9    virtually every witness in a case to travel well over 2,000 miles in order to resolve a dispute

10   with nearly no relationship to the chosen forum.

11          Third, the administrative congestion of the Northern District of California

12   when compared to the Northern District of Georgia also favors transfer of the case to

13   Georgia. As of September 30, 2006, the most recent statistics available from the

14   Administrative Office of the Unites States Courts indicate that the Northern District of

15   Georgia's 2,890 pending civil cases was less than 40% of the Northern District of

16   California's 7,279 pending civil cases.[4]

17          While Plaintiff will likely claim that the forum selection clause should control

18   the court's decision, the opinions of both the United States Supreme Court and the Ninth

19   Circuit Court of Appeals allow this Court the discretion to reach a more practical result. The

20   factors specific to this case clearly illuminate the unfair and unjust impact that will result if

21   this case is litigated in California.

22   / / /

23   / / /

24   / / /

25   / / /

26   _____

27          [4] The total number of judges, including active and senior district court judges as well
     as magistrate court judges, is almost exactly the same in the Northern District of Georgia and
28   the Northern District of California, despite the disparity in case load.

Peacock Communications, ATSSC, Inc.'s Motion to Transfer Venue; Mem. of Pts. & Auths. in Support Thereof –
Case No: 3:07-CV-03638

261771 3

1

## V.    **CONCLUSION**

2    For the reasons set forth herein, ATC respectfully requests that its Motion to

3  Transfer Venue be Granted and that this case be transferred to the United States District

4  Court for the Northern District of Georgia, Atlanta Division.

5

6  Dated:  September 18, 2007                    ROGERS JOSEPH O'DONNELL

7                                                By:  /s/ THOMAS H. CARLSON

8                                                ANDERSEN, TATE & CARR, P.C.
                                                 THOMAS T. TATE
9                                                ELIZABETH CLACK-FREEMAN
                                                 *Of Counsel pending pro hac vice application*
10

11                                               Attorneys for Defendant and Counterclaimant
                                                 PEACOCK COMMUNICATIONS, ATSSC,
12                                               INC., d/b/a ATLANTA TELEPHONE
                                                 COMPANY

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Peacock Communications, ATSSC, Inc.'s Motion to Transfer Venue; Mem. of Pts. & Auths. in Support Thereof –
Case No: 3:07-CV-03638

261771.3