ROGERS JOSEPH O'DONNELL
THOMAS H. CARLSON (State Bar No. 121367)
311 California Street
San Francisco, California 94104
Telephone: 415.956.2828
Facsimile: 415.956.6457

ANDERSEN, TATE & CARR, P.C.
THOMAS T. TATE
ELIZABETH CLACK-FREEMAN
1505 Lakes Parkway, Suite 100
Lawrenceville, Georgia 30043
Telephone: 770.822.0900
Facsimile: 770.822.9680
*Of Counsel, pending pro hac vice application*

Attorneys for Defendant and Counterclaimant Peacock Communications, ATSSC, Inc., d/b/a Atlanta Telephone Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SYNNEX CORPORATION, a Delaware Corporation,

Plaintiff,

vs.

PEACOCK COMMUNICATIONS, ATSSC, INC., a Georgia Corporation; and DOES 1 TO 50 inclusive,

Defendants.

PEACOCK COMMUNICATIONS, ATSSC, INC., a Georgia corporation,

Counterclaimant,

vs.

SYNNEX CORPORATION, a Delaware corporation,

Counterclaim Defendant.

Case No. 3:07-CV-03638-EDL

**DECLARATION OF JOHN C. PEACOCK IN SUPPORT OF PEACOCK COMMUNICATIONS, ATSSC, INC.'S MOTION TO TRANSFER VENUE**

Date: October 23, 2007
Time: 9:00 a.m.
Dept. Courtroom E, Fifteenth Floor
Judge: Magistrate Judge Elizabeth D. Laporte

I, John C. Peacock, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called upon to do so, I would and could competently testify thereto.

2. I am the Chief Executive Officer and the Chief Financial Officer of Peacock Communications, ATSSC, Inc., d/b/a Atlanta Telephone Company ("ATC"). ATC's principal place of business is in Duluth, Georgia, and I reside in Duluth, Georgia.

3. In the early part of 2003, John Groce of Synnex Corporation, a resident of Greenville, South Carolina, then working out of Synnex Corporation's Greenville, South Carolina location, contacted me to introduce me and ATC to Synnex Corporation and to discuss the type of products distributed by Synnex, including Nortel products.

4. At Mr. Groce's suggestion, I caused ATC to enter into a relationship with Synnex whereby ATC would place orders for Nortel products by submitting a purchase order to Synnex, by email, addressed to Synnex's Greenville, South Carolina location.

5. Several years later, I caused ATC to begin purchasing Avaya products through Synnex, using the same purchase order submittal process as described above.

6. Throughout ATC's relationship with Synnex, I communicated with certain Synnex representatives including Tom Brooks, Mark Swilley and John Horner. Mr. Brooks, Mr. Swilley and Mr. Horner all worked out of Synnex's Greenville, South Carolina location.

7. I also communicated with representatives of Synnex's credit department including Anita Kelly and Betty Adams. Both of these representatives also worked out of Synnex's Greenville, South Carolina location.

8. At no point during ATC's relationship with Synnex did I ever communicate with any Synnex employee in the State of California. To my knowledge, no other ATC employee ever communicated with any Synnex employee in the State of California during this time period.

9. After placing an order for products through Synnex, most of those products were shipped to ATC from Synnex's Norcross, Georgia warehouse facility.

10. In some instances, the remainder of the products ATC ordered from Synnex were shipped from a Nortel distribution center in Tennessee.

11. ATC made payments to Synnex to Post Office Box 406748, Atlanta, Georgia 30384. A true and correct copy of an ATC invoice showing the payment address for Synnex at the referenced post office box is attached hereto as Exhibit "1" and is incorporated herein by this reference.

12. At no point during ATC's relationship with Synnex did I place any purchase order or remit any payment to Synnex in the State of California. To my knowledge, no other ATC employee placed any purchase order or remitted any payment to Synnex in the State of California during this time period.

13. During the course of the relationship between ATC and Synnex, Synnex accepted the return of defective Nortel products, during the manufacturer's warranty period. Synnex would then credit ATC's account for the amount of the return. This procedure describes one of the terms of the business relationship between ATC and Synnex concerning the return of defective Nortel products between Synnex and ATC for time period February 2003 through August 2006.

14. After that date, Synnex refused to accept the return of any defective Nortel product purchased by ATC, even though ATC attempted to return those products during the manufacturer's warranty period.

15. ATC has suffered damages as a result of Synnex's failure to accept the return of defective Nortel products.

16. In September of 2005, I caused ATC to begin purchasing Avaya products through Synnex.

17. Avaya offered ATC certain discounts on purchases made through its authorized distributors, including Synnex. That discount was calculated as follows: 10% of the "National Price List" or "NPL" was to be deducted from the "Dealer Price" in order to calculate the price ATC was to be charged for Avaya products (the "10% discount").

18. On multiple occasions, I confirmed with Synnex's Tom Brooks and Mark Swilley their understanding that the 10% discount was being provided by Synnex.

19. Over the course of eighteen months, Synnex Tom Brooks and Mark Swilley represented to me that Synnex was providing ATC the 10% discount on Avaya products that ATC purchased from Synnex.

20. In March of 2007, I caused ATC to begin doing business with another authorized reseller for Avaya called Catalyst. (As set forth below, the Catalyst representative is located in Georgia.) Catalyst agreed that it would provide ATC the 10% discount that had been promised by Avaya. In that regard, Catalyst provided me with a Price Sheet that set out the NPL, Dealer Price and 10% Discount Price for all Avaya products (the "Price Sheet"). Upon receipt of that Price Sheet, I discovered that Synnex had not been providing ATC with the 10% discount that it had agreed to provide to ATC and that the discount provided to ATC was less than 10% on almost all Avaya products that ATC had purchased from Synnex.

21. Because ATC was not provided with the discount that it had been promised by Synnex, during the course of the eighteen month period that it purchased Avaya products from Synnex, ATC has overpaid Synnex for Avaya products it purchased through Synnex.

22. The ATC representatives with relevant information concerning ATC's defense to the claims asserted by Synnex in this lawsuit, and concerning ATC's counterclaims against Synnex, are me, Jose Davila, Andrea Hawks, Robin Hill and Emily Wu. We are all located in and around Atlanta, Georgia.

23. The Nortel representatives with relevant information concerning ATC's defense to the claims asserted by Synnex in this lawsuit, and concerning ATC's counterclaims against Synnex, including Cheryl Whitfield and Jeff Frisbee are located in or around Alpharetta, Georgia.

24. The Avaya representatives with relevant information concerning ATC's defense to the claims asserted by Synnex in this lawsuit, and concerning ATC's counterclaims against Synnex, including John Ellis and Joey Davidson are located in or around Alpharetta, Georgia.

25. The Catalyst representative with relevant information concerning ATC's defense to the claims asserted by Synnex in this lawsuit, and concerning ATC's counterclaims against Synnex, Josh McInerney is located in Greenville, South Carolina.

26. All of the documents and information that ATC intends to use as evidence in this case are located in or around Atlanta, Georgia, Alpharetta, Georgia, Duluth, Georgia and/or Greenville, South Carolina.

27. I do not recall executing the credit application that is attached to Plaintiff's Complaint as Exhibit "A".

28. Although the credit application that is attached to Plaintiff's Complaint as Exhibit "A" appears to contain my "stamped" signature, I do not recall personally affixing my stamped signature to the credit application in question and I do not recall authorizing any employee of ATC to affix my stamped signature to the credit application in question.

29. ATC retained a copy of the credit application that was submitted to Plaintiff at its Greenville, South Carolina location, and there is no signature on that credit application.

I declare under penalty of perjury under the laws of the State of Georgia, the laws of the State of California and the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on September 17, 2007, in Duluth, Georgia.

John C. Peacock

**EXHIBIT 1**

Peacock Communications
dba Atlanta Telephone Company
3435 Breckinridge Blvd.
Bldg. 100, Suite 120
Duluth, GA 30096

# Purchase Order

| Date | P.O. No. |
|---|---|
| 10/10/2006 | 13698 |

| Vendor |
|---|
| Synnex Corporation — GE<br>P.O. Box 406748<br>Atlanta, Georgia 30384-6748 |

| Ship To |
|---|
| Peacock Communications<br>dba Atlanta Telephone Company<br>3435 Breckinridge Blvd.<br>Bldg. 100, Suite 120<br>Duluth, GA 30096 |

| Terms | Due Date | Account # |
|---|---|---|
| Net 60 | 12/9/2006 | 292288 |

| Item | Description | Qty | Rate | Customer | Amount |
|---|---|---|---|---|---|
| 700316474 | PARTNER ACS Mod 5x9 -R7.0 | 10/11 170 | 425.00 | | 72,250.00 |
| 700226525 | PARTNER VM CARD R3 LARGE (12 MAILBOXES) | 10/11 20 | 285.00 | | 5,700.00 |
| 700340169 | PARTNER 6D BUTTON BLACK NS | 10/11 20 | 68.00 | | 1,360.00 |
| 700340227 | PARTNER 34D BUTTON BLACK NS | 100 10-16 | 135.00 | | 13,500.00 |
| | TOM THIS IS A REVISED COPY | | | | |
| | | | | **Total** | $92,810.00 |

EXHIBIT 1

Blumberg No. 5119