1  ROGERS JOSEPH O'DONNELL
   THOMAS H. CARLSON (State Bar No. 121367)
2  311 California Street
   San Francisco, California 94104
3  Telephone:  415.956.2828
   Facsimile:  415.956.6457
4
   ANDERSEN, TATE & CARR, P.C.
5  THOMAS T. TATE
   ELIZABETH CLACK-FREEMAN
6  1505 Lakes Parkway, Suite 100
   Lawrenceville, Georgia 30043
7  Telephone:  770.822.0900
   Facsimile:  770.822.9680
8  *Admitted pro hac vice*

9  Attorneys for Defendant and
   Counterclaimant Peacock Communications,
10 ATSSC, Inc. d/b/a Atlanta Telephone
   Company

11

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNNEX CORPORATION,<br>a Delaware Corporation,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>PEACOCK COMMUNICATIONS,<br>ATSSC, INC., a Georgia Corporation; and<br>DOES 1 TO 50 inclusive,<br><br>　　　　　　Defendants. | Case No. 3:07-CV-03638-EDL<br><br>**REPLY TO SYNNEX'S OPPOSITION TO PEACOCK COMMUNICATIONS, INC. , d/b/a ATLANTA TELEPHONE COMPANY'S MOTION TO TRANSFER VENUE.**<br><br>Date:　　October 23, 2007<br>Time:　　9:00 a.m.<br>Dept.　　Courtroom E, Fifteenth Floor<br>Judge:　　Magistrate Judge<br>　　　　　Elizabeth D. LaPorte |
| PEACOCK COMMUNICATIONS,<br>ATSSC, INC., a Georgia corporation,<br><br>　　　　　　Counterclaimant,<br><br>　vs.<br><br>SYNNEX CORPORATION,<br>a Delaware corporation,<br><br>　　　　　　Counterclaim<br>　　　　　　Defendant. | |

I.  **INTRODUCTION**

In a late-filed[1] opposition Synnex tries to justify the fact that it is attempting to force the parties to litigate this case in a forum that is, without dispute, inconvenient to both the parties and the potential third-party witnesses. However, it cites the court to case law that is easily distinguishable from the facts in the instant case and ignores the manifest inconvenience to the third parties. In filing here, Synnex's motive is clear: to use a forum selection clause in a form credit agreement to make it financially impossible for the Defendant and Cross-Complainant Peacock Communications ("ATC") to defend itself against Plaintiff's allegations or to prosecute its own claims. This scenario can be easily avoided by the straight-forward analysis required by 28 U.S.C. § 1404 (a).

II.  **ARGUMENT**

   A.  **A Transfer in This Case Will Not Shift the Inconvenience from ATC to Synnex, but Will Result in a More Prudent and Equitable Situation for Both Parties and the Third-Party Witnesses.**

In its opposition, Synnex alleges that to grant ATC's motion to transfer this case to the Northern District of Georgia will merely shift the inconvenience of this litigation from ATC to Synnex. Synnex provides absolutely no support for its conclusion, however as it <u>does not dispute</u> that there are no witnesses or other evidence located in California. Rather, Synnex holds fast to the notion that its choice of forum and the forum selection clause contained in the credit agreement are the primary factors which this Court should consider in its 1404 (a) analysis. While Synnex's choice of forum and the forum selection clause are no doubt factors that the Court should consider, according to former United States Supreme Court Justice Thurgood Marshall, they are by no means dispositive. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988).[2] In the present case, there are a number of other

---

[1] Without explanation Synnex blithely filed its opposition two days late. This has caused ATC prejudice by truncating its time to file this reply, and this reply is filed without prejudice to ATC's belief that the opposition should be stricken.

[2] The case of *The Bremen Holding v. Zapata Offshore Co.*, 407 U.S. 1 (1972), cited by Synnex, does not address a § 1404 transfer analysis, but rather addresses a dismissal analysis controlled by the doctrine of forum non conveniens.

factors which tip the scale in favor of transfer to the Northern District of Georgia.

### 1. Convenience of Witnesses

"The convenience of witnesses is the most important factor in deciding a motion under § 1404 (a)." *Smith v. Staffmark Temporary Agency*, 2007 WL 2436669 at *2 n. 9 (D. Kan. Aug. 22, 2007). The importance of this factor is derived from the basic premise that "venue is primarily a matter of convenience of litigants and witnesses." *Denver & Rio Grande Western Ry. Co. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 560 (1967); *see also A.J. Industries v. United States Dist. Ct.*, 503 F.2d 384, 386-387 (9th Cir. 1974) (focusing on the importance of the convenience of parties and witnesses in a section 1404 (a) analysis). The concern related to the inconvenience to witnesses is compounded exponentially when the distance between the existing and proposed venue is more than 100 miles. *See In re Volkswagen AG*, 371 F.3d 201, 204-205 (5th Cir. 2004).

In *Volkswagen*, the 5th Circuit focused on the factor of convenience of witnesses when it determined that the district court abused its discretion in refusing to transfer venue. *See id.* at 204-206. That case was filed in Marshall, Texas, which is located in the Eastern District of Texas, while the facts underlying the claim occurred in San Antonio, Texas, which is located in the Western District of Texas. *See id.* at 202. In its analysis, the Court noted that the vast majority of the witnesses resided near San Antonio, which is approximately 390-400 miles from Marshall, Texas. The Court was greatly concerned with the additional travel time for the witnesses, which would increase the meal and lodging expenses, and likely force the fact witnesses to be away from their regular employment in order to stay overnight. The Court held that, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404 (a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 204-205. The Court went on to remand the case with instructions to transfer. *See id.* at 206.

Synnex, in its opposition to the § 1404 motion, heavily relies on *Republic Mortgage Insurance Company v. Brightware, Inc.* to support its position that the instant case

1  should remain in this Court.  Not surprisingly, however, Synnex neglects to mention that the
2  *Republic Mortgage* Court considered the convenience of the witnesses to be the most
3  important factor in the analysis.  *See Republic Mortgage Insurance Company v. Brightware,*
4  *Inc.*, 35 F. Supp.2d 482, 486-487 (M.D.N.C. 1999).  However, in that case, the convenience
5  of the witnesses factor did not favor one forum over the other.  This was because "numerous
6  witnesses live in each state." *Id.* at 487.  The Court also found that any transfer would merely
7  shift the burden because "one side or the other will be burdened with bringing themselves and
8  their witnesses from far away." *Id.* at 487.  In the instant case, there is no dispute that none of
9  the witnesses, including party witnesses, reside in the Northern District of California.

10  Synnex also cites *Stonehenge Ltd. v. Garcia¸* 989 F. Supp. 539 (S.D.N.Y.
11  1998), to support its position that the instant case should not be transferred to the Northern
12  District of Georgia.  A close reading of *Stonehenge* illustrates that it is materially
13  distinguishable on its facts from the instant case.  In *Stonehenge*, the forum selection clause
14  called for California as the forum.  Notably, the Court did not find the forum selection clause
15  dispositive, but did engage in the proper analysis of all the 1404 (a) factors relevant to the
16  case.  *See Stonehenge,* 989 F. Supp. at 540-541.  The Court considered the location of the
17  parties and determined that all but one of the six parties resided in California, and that the
18  majority of non-party witnesses were located in California.  The fact that the vast majority of
19  parties and witnesses were located in California was a significant factor in litigating the case
20  in California.  *See id.* at 541.

21  Synnex also cites *P&S Business Machines, Inc. v. Canon USA, Inc.*, 331 F.3d
22  804 (11th Cir. 2003), to support its position that the instant case should not be transferred to
23  the Northern District of Georgia.  The *P&S* case is also distinguishable on its facts from the
24  instant case.  In *P&S*, the Court was again faced with a forum selection clause calling for
25  California as the forum of choice.  *See id.* 806-807.  The Court found that the choice of
26  California in the forum selection clause was "entirely reasonable" because all of Canon's
27  "present and former employees" who would be relevant witnesses "live[d] in California." *Id.*
28  at 809.

1    None of the cases cited by Synnex in its opposition to ATC's motion support a denial of the motion to transfer. As addressed above, the cases upon which Synnex relies are distinguishable -- in each of those cases, numerous witnesses resided or worked in the forum where the trial was to proceed. In the instant case, upon information and belief, <u>every single witness</u> that has been identified ATC and Synnex either resides or works in, or near, Georgia. *See* Peacock Aff. ¶¶ 4, 6-8, 22-25.[3] Not even one of the witnesses works or resides in or near, California. This is a fact that <u>Synnex does not dispute</u> in its opposition to the § 1404 motion, but merely glosses over as addressing only one factor in the analysis. It is important to remember that while not dispositive of the ultimate transfer analysis, many courts regard this factor as the <u>most important</u> factor in the analysis.

The Court should consider that if this case is not transferred, all of the witnesses would be forced to travel over 2000 miles (one way) in order to testify. This includes forcing all employee witnesses of both Synnex and ATC as well as all third party witnesses, to travel thousands of miles, both to and from California in order to litigate this case to judgment. The California forum therefore grants a significant advantage to Synnex, in that while it can use its vast resources to transport its employees from the Southeast to California, ATC cannot compel its third-party witnesses to attend trial and testify in California. That result would not be equitable or just. "In the interest of justice," a phrase taken directly from § 1404 (a), grants a glimpse into how the system is designed to work, and is the very reason why § 1404 exists. Simply put, not only will transferring this case to the Northern District of Georgia result in a more convenient forum for <u>both parties</u>, it will also give the court the opportunity to weigh all the evidence available to <u>both sides</u> in order reach the correct result.

**2.    Convenience of the parties**

28 U.S.C. § 1404 also instructs courts to consider the convenience of the parties as a factor in the analysis. *See Center for Biological Diversity and Pacific*

---

[3] Synnex failed to dispute ATC's position on this issue and did not make any allegations or attach any evidence to the contrary.

Page 5

*Environment v. Kempthorne*, 2007 WL 2023515 at *3 (N.D. Cal. July 12, 2007). As set forth in ATC's initial brief, in the instant case the parties dealt with each other mainly in Georgia. All of ATC's employees with knowledge of the underlying dispute are located in Georgia. *See* Peacock Aff. ¶ 22. All of Synnex's employees that had contacts with ATC are located in or near Georgia. *See* Peacock Aff. ¶¶ 6-8. Upon information and belief none of Synnex's California representatives have ever had any contact with ATC. *See* Peacock Aff. ¶ 8. The facts underlying the claims, on either side, have absolutely no connection to the California forum. The convenience of both parties will be served by transferring this case to the Northern District of Georgia where the representatives of both parties will have an insignificant amount of travel time when compared to traveling to California for trial.

### 3.   Access to evidence

Access to evidence is another important factor to which the courts give much weight when deciding whether a case should be heard, transferred, or dismissed. *See J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co., Ltd.*, 2007 WL 2671265 at *10 (M.D. Fla. Sept. 7, 2007) (stating that the litigants access to evidence is perhaps the most important private interest factor). In the instant case, all the physical evidence resides near Georgia. *See* Peacock Aff. ¶¶ 4-5, 26. Synnex does not claim that it retains any evidence in California related to this case. All of the documents that ATC will submit as evidence are located in the Northern District of Georgia. All of the documents possessed by Synnex are located, upon information and belief, in Atlanta, Georgia or in Greenville, South Carolina, a mere 60 miles from the Georgia state line. *See id.* Forcing this case to proceed in California would require both sides to needlessly transport evidence thousands of miles from the Southeast to California for trial.

### 4.   Location of events that form the basis of the claim

In *Stonehenge*, discussed *supra*, the Southern District of New York considered the location of the events that formed the basis of the underlying claim. In its analysis, the Court found that, "[t]he majority of other important events appear to have taken place on the west coast." *Id.* at 541. In the instant case, not only did the majority of the operative facts

Page 6

occur outside of California, but <u>all</u> the operative facts occurred in, or near, Georgia.  *See* Peacock Aff. ¶¶ 3-15, 22-26.  ATC negotiated all of its business with Synnex through Synnex's Greenville, South Carolina offices.  *See* Peacock Aff. ¶¶ 6-8.  Synnex shipped many of the products ATC ordered from Norcross, Georgia.  *See* Peacock Aff. ¶ 9.  ATC submitted payments to Synnex's Atlanta, Georgia, address.  *See* Peacock Aff. ¶ 11.  Therefore, this case, unlike *Stonehenge*, clearly has no connection to the California forum, and should be transferred to the Northern District of Georgia.[4]

### 5. Place of negotiation & execution of agreements

The place of negotiation and execution of the agreements is also a factor the Court should consider in its 1404 analysis.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2000).  *Sub judice,* the business dealings between the parties from which Synnex's claim arose, were negotiated and executed by ATC in Georgia and faxed to Synnex's Greenville, South Carolina offices.  *See* Peacock Aff. ¶¶ 3-5, 27-29.  At no time did any of the negotiations or executions take place in California, therefore, this factor also favors transfer to the Northern District of Georgia.

### 6. Financial impact

The variance in litigation costs between the two forums has also been included by the Ninth Circuit as a factor in the Court's 1404 analysis.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2000).  In the instance case, all the components of the case which impact the cost of litigation favor transfer of the case to the Northern District of Georgia.  As discussed *supra*, <u>both parties'</u> witnesses and evidence are located near Georgia and will require transportation to and from California if the case is not transferred.  This waste of resources, by both parties, can be easily avoided if the case is transferred to the Northern District of Georgia.

### 7. Administrative congestion of the courts

---

[4] Even if Plaintiff is correct in its contention that California law applies, a federal court in Georgia would not have much difficulty in applying California law since this case involves a dispute related to sales of goods, which is governed by Article 2 of the Uniform Commercial Code, which has been adopted with little change in both Georgia and California.

While not a dispositive factor, "docket congestion, if proven, may be an appropriate consideration in a § 1404 motion to transfer." *P&S Business Machines, Inc. v. Canon USA*, Inc., 331 F.3d 804, 808 (11th Cir. 2003).  In its opposition, Synnex <u>does not dispute</u> that this factor favors transfer of the case to the Northern District of Georgia based on the most recent statistics available from the Administrative Office of the United States Courts.  With both venues having almost exactly the same number of judges, while Georgia's 2,890 pending civil cases is less than 40% of the Northern District of California's 7,279 pending civil cases[5], this factor clearly favors transfer to the Northern District of Georgia.

### III.   CONCLUSION

As shown, a proper analysis of each of the factors in a 1404 (a) analysis clearly favors transfer of this case to the Northern District of Georgia for the convenience of the parties and witnesses and to avoid an unjust and inequitable result.  For the reasons set forth herein, ATC respectfully requests that its Motion to Transfer Venue be Granted and that this case be transferred to the United States District Court for the Northern District of Georgia, Atlanta Division.

Dated:  October 9, 2007        ROGERS JOSEPH O'DONNELL

By:    /s/ THOMAS H. CARLSON

ANDERSEN, TATE & CARR, P.C.
THOMAS T. TATE
ELIZABETH CLACK-FREEMAN
*Admitted pro hac vice*

Attorneys for Defendant and Counterclaimant
PEACOCK COMMUNICATIONS, ATSSC, INC.,
d/b/a Atlanta Telephone Company

---

[5] Based on the most recent statistics available (September 30, 2006).